The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding prior Opinion and Award. However, pursuant to its authority under G.S. §97-85, the Full Commission has made some modifications to the Deputy Commissioner's decision and enters the following Opinion and Award.
**********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 5 March 1997 and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. An employment relationship existed between plaintiff-employee and defendant-employer on 10 October 1994.
2. Plaintiff's average weekly wage on 10 October 1994 was $250.00, yielding a compensation rate of $166.68, subject to verification by an Industrial Commission Form 22.
3. Stipulated Exhibit #2 consists of the following documents admitted into evidence:
 1) North Carolina Secretary of State Application for Certification of Authorization for Tobacco Transport, Inc., dated 24 June 1993;
 2) North Carolina Secretary of State Annual Report for Tobacco Transport, Inc., dated 18 September 1995.
 3) Employer's Quarterly Tax and Wage Report for Initial Filing Only for Defendant Tobacco Transport, Inc., dated Third Quarter, 1994.
4. Defendant CNA Workers' Compensation and Employer's Liability Insurance Policy for defendant-employer, Tobacco Transport, Inc., coverage period dates of 1 December 1993 to 1 December 1994, is admitted into evidence as Stipulated Exhibit #3.
5. Stipulated Exhibit #4 consists of plaintiff's medical records and bills concerning this claim.
6. A pay stub, #460, for plaintiff, dated 13 October 1994 from defendant-employer is admitted into evidence as Stipulated Exhibit #5.
7. The following Social Security Administration documents concerning plaintiff are admitted into evidence as Stipulated Exhibit #6.
 1) Disability Determination and transmittal, dated 20 June 1995;
 2) North Carolina Disability Determination Service Psychological Evaluation, Edward V. English, M. A., dated 15 June 1195;
 3) Mental Residual Functional Capacity Assessment dated 15 June 1995; and
4) Psychiatric Review Technique dated 15 June 1995.
8. An independent medical evaluation by Dr. Nelson T. Macedo, dated 19 February 1997, is admitted into evidence as Stipulated Exhibit #7.
9. Plaintiff's documents regarding this injury from the State of Kentucky Department of Workers' Claims is admitted into evidence as Stipulated Exhibit #8.
10. The issues to be determined by this hearing are as follows:
 1) Whether defendant CNA was the carrier on risk for this claim on 10 October 1994 and is subject to and bound by the North Carolina Workers' Compensation Act.
 2) Whether defendant-employer Tobacco Transport, Inc., was non-insured on 10 October 1994 for this injury; and
 3) Whether plaintiff is disabled as a result of his 10 October 1994 injury, and, if so, to what extent.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 10 October 1994, plaintiff was a 28-year old male employed by defendant-employer as a general laborer. Plaintiff's duties included loading tobacco bales from a truck to a conveyer belt.
2. On 10 October 1994 plaintiff worked on the top of the transport truck, approximately 15-20 feet above ground level, unloading tobacco in Kinston. As plaintiff unloaded bales of tobacco, an additional bale unexpectedly came off the conveyor, causing plaintiff to lose his balance and fall from the truck.
3. Plaintiff landed on a concrete floor, striking the left side of his head, back, chest, abdomen and shoulder. As a result of this fall, plaintiff was unconscious approximately 1-2 minutes, sustained a closed head injury, chest, back and shoulder injuries. Plaintiff initially received treatment at Lenoir Memorial Hospital. Later plaintiff transferred to the Trauma Center at Pitt Memorial Hospital where he received two (2) different chest tubes and a percutaneous drainage for a loculated effusion with trapped lung. Plaintiff also underwent a left thoracotomy with decortication bronchoscopy on 1 November 1994.
4. This incident which occurred on 10 October 1994 was an interruption of plaintiff's normal work routine, thereby resulting in plaintiff sustaining an injury by accident arising out of and in the course of his employment with defendant-employer.
5. Plaintiff received services from a speech language pathologist while at Pitt County Memorial Hospital. Immediately following the plaintiff's 10 October 1994 work-related injury, plaintiff suffered from a scissoring gate, balance difficulty and compromised cognitive ability. Plaintiff's injury by accident also altered his speech.
6. Pitt County Memorial Hospital discharged plaintiff on 7 November 1994. Plaintiff received follow-up care from various physicians and a speech therapist. Plaintiff's family physician, Dr. Satish Kumar, directed his treatment at the time of hearing.
7. Plaintiff has difficulty breathing with any physical exertion and becomes winded even when walking out in his yard at home. Plaintiff receives Ventolin and Albuterol to assist his breathing problems. Plaintiff additionally has low back pain and takes Naprosyn, Darvocet, Tylenol or Advil as needed for this pain.
8. Plaintiff's cognitive abilities have decreased since his work-related injury on 10 October 1994. Plaintiff has a tenth grade education and has received no vocational training. Despite his lack of a formal education, plaintiff had always been able to earn money through various farm labor-type jobs prior to his work-related accident on 10 October 1994. Additionally, since plaintiff's accident, he has problems with memory and is more quick-tempered.
9. Freddy Todd, a supervisor of defendant-employer, contacted plaintiff in 1993 and made arrangements for plaintiff to work for defendant-employer for the July to October 1994 tobacco season. Mr. Todd had also hired plaintiff in the 1993 season, but it was for a different employer, not defendant-employer. Plaintiff never worked for Mr. Todd or defendant-employer in Kentucky, and, prior to the 1994 season, had never worked for defendant-employer. Mr. Todd received authorization from Leesha Breeding prior to hiring plaintiff. Ms. Breeding is the President of defendant-employer and controlled personnel decisions. Mr. Todd hired eight employees to work on the loading crew in North Carolina in 1994.
10. Following plaintiff's injury by accident on 10 October 1994, defendant-employer filed workers' compensation papers with the State of Kentucky. Plaintiff received $500.01 pursuant to this filing. Plaintiff did not receive any further benefits under Kentucky law due to denial of coverage for North Carolina. Plaintiff additionally received a letter from defendant-carrier indicating his claim was subject to the jurisdiction of North Carolina not Kentucky.
11. Plaintiff received approximately $850.00 following the accident authorized by Ms. Breeding after Mr. Todd informed Ms. Breeding plaintiff was hurting financially.
12. Plaintiff received no further workers' compensation benefits due to a dispute between plaintiff-employee and defendant-carrier as to whether the defendant-carrier covered injuries arising in the state of North Carolina.
13. As a result of his accident, plaintiff has been unable to work or earn wages since 10 October 1994 and continuing. Plaintiff lives with his mother and has become dependent financially on her for support.
14. On 17 September 1993, the defendant-employer purchased workers' compensation insurance from The Fidelity Casualty Company of New York, a CNA Company, for a period covering 1 December 1993 through 1 December 1994. The policy identifies the insured as defendant-employer with an address of Post Office Box 98, Middleton, Kentucky 42761. The first page of the policy is the policy information page. The following language is included:
 Item 3. A. Workers' Compensation Insurance: Part One of the policy applies to Workers' Compensation Law of the states listed here: 16-Kentucky
That language is followed by reference to the liability insurance, after which appears the following:
 C. Other States Insurance: Part Three of the Policy applies to the states, if any, listed here.
No states are listed under "Other States Insurance" on the information page.
15. Paragraph 1 of the "Other States Insurance" provision, appearing on page 4 of the contract, provides as follows:
 1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
The policy also contains an endorsement "WC 00 03 18," which amends the form contract language on page 4. Paragraph 2 of the policy thus reads:
 2. If you begin work in any one of those states after the effective date of the policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as through that state were listed in Item 3.A. of the Information page.
Under this provision, if defendant-employer had begun work in any of "those states" listed in item 3.C. of the Information Page, the policy would have covered plaintiff's injury. However, no states were listed in Item 3.C.; therefore, this provision does not provide coverage for plaintiff's injury. Contrary to defendant-employer's contention, "those states" clearly refers to states listed in Item 3.C., and not to states listed in the schedule of states in which the endorsement applies.
16. Paragraph 4 of the policy, by virtue of endorsement WC 00 03 18, reads:
 4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.
Under this provision, if the employer had worked on 1 December 1993 (the effective date of the policy) in North Carolina (a state not listed in Item 3.A. of the information Page), there would have been coverage for plaintiff's injury if defendant-employer notified defendant-carrier within thirty days of 1 December 1993. Contrary to defendant-carrier's contention, this provision is invoked irrespective of whether "one or more states are shown in Item 3C of the Information Page." Although the paragraph 4 provision is written in exclusionary language, its effect is to provide an additional thirty-day window for adding other states coverage once the policy takes effect. Nevertheless, as defendant-employer did not have work in North Carolina on 1 December 1993, paragraph 4 does not apply to extend coverage for plaintiff's injury.
17. The policy provisions regarding coverage in the contract between defendant-employer and defendant-carrier are not ambiguous. These provisions must be accorded their plain and ordinary meaning.
18. The evidence does not show that any state other than Kentucky is covered by workers compensation insurance pursuant to the policy between defendant-employer and defendant-carrier for the period 1 December 1993 to 1 December 1994.
19. As of 10 October 1994, defendant-employer had failed to secure workers' compensation insurance for accidents in the State of North Carolina. Plaintiff's accident on that date occurred in Kinston, North Carolina; plaintiff is a North Carolina resident; defendant-employer has a North Carolina registered office address of 1042 Washington Street, Raleigh, North Carolina and employed three (3) or more employees in North Carolina in 1994.
20. On 10 October 1994, defendant-employer was engaged in interstate commerce through its business of transporting of tobacco, yet only contracted and paid for workers' compensation insurance for accidents arising under Kentucky law. Therefore, defendant-employer is subject to the penalty provisions of N.C. Gen. Stat. § 97-94.
21. Defendant-employer has defended this case on unreasonable grounds. Although there was a genuine issue as to whether defendant-carrier was on the risk, defendant-employer is responsible for plaintiff's work injury. Defendant-employer has not raised credible evidence to dispute the nature and extent of plaintiff's compensable injury. Plaintiff should not go without any workers' compensation benefits while defendants litigate the coverage issue. Defendant-employer's failure to pay plaintiff the benefits to which he is entitled, pending resolution of the coverage dispute, constitutes unfounded litigiousness, entitling plaintiff to reasonable attorney's fees.
22. At the hearing the parties stipulated plaintiff's average weekly wage of $250.00 subject to verification by an Industrial Commission Form 22 to be submitted by defendant-employer through Leesha Breeding's deposition. The parties chose not to depose Ms. Breeding and a Form 22 was never submitted. Therefore, plaintiff's average weekly wage on 10 October 1994 was $250.00, yielding a compensation rate of $166.68 per week.
23. As a result of his compensable injury, and taking into consideration his aptitude, education and experience, plaintiff has been incapable of earning wages in his former position with defendant-employer or in any other position from 10 October 1994 through the present.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction to hear and decide this claim. On 10 October 1994 the defendant-employer was subject to and bound by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On 10 October 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. As a result of his compensable injury on 10 October 1994, plaintiff is entitled to total disability benefits from 10 October 1994 and continuing until further Order of the Commission at his compensation rate of $166.68 per week. Defendant-employer is not entitled to a credit for the $850.00 paid to plaintiff by Mr. Todd and authorized by Leesha Breeding N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to reasonable attorney fees for defendant-employer's unreasonable defense of plaintiff's injury by accident. N.C. Gen. Stat. § 97-88.1.
5. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-94.
6. On 10 October 1994, defendant-employer was non-insured for Workers' Compensation Insurance in the State of North Carolina and is subject to the penalty provisions of N.C. Gen. Stat. §97-94.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-employer shall pay to plaintiff total disability at a compensation rate of $166.68 per week from 10 October 1994 and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum and are not subject to an attorney fee. Those amounts accrued after the filing date of this Opinion and Award shall be subject to attorney fees set forth in Paragraph 3 of this AWARD.
2. Defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 10 October 1994, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
3. A reasonable attorney's fee of $9,500.00 shall be paid by defendant-employer directly to plaintiff's counsel. This attorney's fee shall be assessed as part of the costs of this action and shall not be deducted from plaintiff's lump sum award of compensation. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this AWARD which accrues following the date of the filing of this Opinion and Award is approved for plaintiff's counsel and shall be paid as follows: Every fourth check owed to plaintiff shall be paid directly to plaintiff's counsel, continuing until further Order of the Commission. Consideration and designation of this attorney fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the submission of medical expenses to defendant.
4. Defendant-employer shall pay the costs.
***********
The Full Commission enters the following:
 ORDER
1. Defendant-carrier, CNA Insurance Company, is hereby DISMISSED as a party.
2. Pursuant to the provisions of N.C. Gen. Stat. §97-94(b), the defendant-employer is hereby fined the sum of $50.00 per day for each day since 10 October 1994 until it either provide Workers' Compensation benefits in North Carolina or no longer falls under the jurisdiction of the North Carolina Industrial Commission for refusal and neglect to provide Workers' Compensation benefits for plaintiff herein. This fine shall be enforced by the Office of the Attorney General for the State of North Carolina and this case is hereby REFERRED to the Office of the Attorney General for such enforcement.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER